(C. D. 815)

Balfour, Guthrie & Co., Ltd. *v.* United States

United States Customs Court, First Division

(Decided December 1, 1943)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Robert C. O'Grady*, special attorney), for the defendant.

Before Oliver, Walker, and Cole, Judges

Walker, Judge: The issue raised by this protest has been before this and our appellate court on numerous occasions. The merchandise involved is described on the invoice as "joss sticks" and was assessed with duty at the rate of 45 per centum ad valorem under paragraph 409 of the Tariff Act of 1930, having been classified by the collector as "articles not specially provided for, * * * partly manufactured of * * * bamboo."

The claims recited in the protest are for free entry under the provision in paragraph 1703 of the same Act for "Joss stick or joss light," or as "spunk" under paragraph 1769, or for duty at the rate of 1¼ cents per pound under the provision in paragraph 409 for "split bamboo," or at 10 or 20 per centum under the nonenumerated unmanufactured or manufactured articles provisions in paragraph 1558. None of these claims is abandoned, although it is evident that the claim mainly relied upon is that for free entry as "joss stick or joss light."

The evidence offered in the case at bar consists of a sample, representative of the merchandise, which was received in evidence without objection as collective exhibit 1, the record and exhibits in the case of *J. M. Da Rocha* v. *United States*, Suit 4138, which was decided May 2, 1938, and is reported in 26 C. C. P. A. 78, T. D. 49613, and which, in

turn, had as part of the record therein the record in the case of *Balfour, Guthrie & Co., Ltd.* v. *United States*, decided by this court and reported in T. D. 47678, and the testimony of one witness on behalf of the defendant.

In arriving at its decision in the *Da Rocha* case, the Court of Customs and Patent Appeals considered the question of whether the articles involved were within the common meaning of the term "joss sticks," and, finding the testimony of the witnesses to be of no aid on that point, turned to lexicographers and the Summary of Tariff Information for assistance, and concluded that in order to fall within the common meaning of the term an article must be made from the dust of odoriferous woods.

No evidence was offered on this subject on behalf of the plaintiff in the case at bar, but John W. Custer, a Government chemist, was called by the defendant, and he testified that analysis of merchandise similar to collective exhibit 1 herein revealed it to be composed of "vegetable material, apparently wood and straw, leaf material" and a stick of bamboo, and not to be composed in any part of odoriferous wood.

As the record stands, we believe it justifies a finding that the merchandise at bar does not come within the common meaning of the term "joss sticks," but it is urged by the plaintiff that it does fall within the commercial meaning of the term.

The doctrine of commercial designation, which plaintiff seeks to invoke, has its foundation in the principles—

* * * that tariff statutes are directed to trade and commerce, and that tariff terms are used by the Congress in their known commercial sense, unless a contrary intention clearly appears.

The foregoing is from the opinion in the case of *Swift & Co.* v. *United States*, 27 C. C. P. A. 181, C. A. D. 83, as is the following:

It is also well settled that it will be presumed, in the absence of evidence to the contrary, that the commercial meaning of a tariff term is the same as its common meaning.

It would seem to follow that the converse of the rule just expressed would obtain, that is, that in the absence of evidence to the contrary it is presumed that the common meaning of a tariff term is the same as its commercial meaning.

In the case at bar it is established that the common meaning of the term in question, "joss sticks," requires that the article be made from the dust of odoriferous woods, and hence does not include the merchandise in question, and it would seem that by the application of the rule cited above a presumption exists that the commercial meaning of the term contains the same requirement and hence would not include the merchandise at bar.

There was no attempt in the case at bar to rebut that presumption as a preliminary to the offer of proof of commercial designation, but

the plaintiff was permitted to offer evidence directed toward establishing that merchandise such as that at bar was known in the trade and commerce of the United States which dealt in such articles as joss sticks. If this evidence were sufficient to establish that fact it would appear that plaintiff would thereby also automatically satisfy the requirement of showing that there was a difference between the commercial and common meanings of the term. We are satisfied, however, that the evidence offered on behalf of the plaintiff failed to establish a commercial meaning for the term which included the merchandise at bar and which differed from its common meaning.

The record before us contains the testimony of A. Hord Winn given at the trial of the *Balfour, Guthrie & Co.* case, *supra*. Mr. Winn identified himself as manager of the firecracker department of that concern since 1927, and stated that in conjunction with firecrackers he handled merchandise similar to exhibit 1 in that case (which presumably was the same as exhibit 1 offered on the trial of the present case). He stated that Balfour, Guthrie & Co. imported for the wholesale trade, and that he had entire charge of the sales of articles such as those here in question. Mr. Winn's testimony indicates that such sales were made throughout the United States, and he estimated that his firm did about 50 per centum of all the business in the United States of buying such articles and selling them to wholesalers.

He produced a number of invoices, which were received in evidence as collective exhibit 2, on which items of "joss sticks" appeared, and testified that such items referred to merchandise identical with exhibit 1.

However, when he was asked.

Are these articles like exhibit 1 sold under a definite and uniform name in the wholesale trade so far as you know throughout the United States?

the witness answered,

I know nothing about how others classify them.

The witness then stated that his firm sold them under a definite and uniform name, and that the orders therefor were written by his salesmen, who designated the merchandise therein as "joss sticks," but he could not recall any orders which came direct from the customers, showing how they designated them.

The other witness who testified with reference to commercial designation was Hal M. Thompson, a wholesale dealer in fireworks, who testified that he had made sales in Oregon, Washington, Idaho, Montana, North Dakota, New Mexico, Arizona, Utah, Nevada, and California of merchandise similar to exhibit 1, and that on and before June 18, 1930, and up to the time of his testimony (1933) he had sold them as "Chinese joss sticks."

In our view the foregoing testimony is insufficient to satisfy the requirements of the rule of commercial designation. In order to invoke that rule in the case at bar it must be shown that, in the trade and commerce of the United States, the merchandise in question was bought and sold and known definitely, uniformly, and generally, and not partially, locally, or personally, as joss sticks. The most that can be said of the testimony of these witnesses is that they have stated the practice of their firms in the sale of the merchandise at bar. This is some evidence tending to establish commercial designation, but it is not sufficient, standing alone, to prove the elements of commercial designation as stated above.

The mere fact that Mr. Winn's firm imported and sold 50 per centum of all the articles such as those at bar which were dealt in in the United States does not, of itself, establish that the practice of that firm was the trade practice. It appears from the record that there was a large trade, involving at least 250 wholesalers, in the United States dealing in such merchandise. As to how that trade regarded merchandise such as that in issue the record is silent. There is nothing to show that the designation applied to such articles by the firms of the two witnesses was general, definite, and uniform in the wholesale trade, and we therefore hold that the record fails to bring the merchandise at bar within the meaning of the term "joss sticks" as used in the act.

With respect to the alternative claims recited in the protest, there seems to be no question but that the merchandise is not classifiable under the provision in paragraph 1769 for "spunk." In the *Da Rocha* case, *supra*, the court held that merchandise such as that at bar did not come within the common meaning of that term, and this holding is strengthened by evidence offered in the case at bar that "punk," which is synonymous with "spunk" does not have a stick in the center as does the merchandise at bar. As to the claim for duty under the provision for "split bamboo," it would appear that the articles in issue are something more than split bamboo, i. e., they are articles made in part with bamboo, and as such are enumerated in paragraph 409, *supra*. This also disposes of the claim made under the nonenumerated articles provision, paragraph 1558.

The protest is therefore overruled, and judgment will issue accordingly.